IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CITIBANK, N.A., | * | |
| Plaintiff, | * | Case No. PX 16-01697 |
| v. | * | |
|  | * | |
| JERICHO BAPTIST CHURCH MINISTRIES, INC. et al., | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION**

Pending in this interpleader action is a Petition for Attorneys' Fees and Costs filed by Plaintiff Citibank, N.A. ECF No. 29. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, Citibank's petition is granted in part.

**I.    BACKGROUND**[1]

Jericho Baptist Church Ministries, Inc. ("the Church"), located in Landover, Prince George's County, Maryland, was incorporated in the District of Columbia in 1962 by Reverend James R. Peebles, Sr.; his wife, Betty Peebles; and Alice Harvey. The parties refer to this corporate entity as "Jericho DC" to distinguish it from a latter-formed entity incorporated in Maryland, also under the name "Jericho Baptist Church Ministries, Inc." ("Jericho MD"). Since its founding, the Church has been operated and controlled by a Board of Trustees.

---

[1] These facts are taken from Citibank's Complaint and supplemented by background found in this Court's decision in *Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953, 2016 WL 4721257 (D. Md. Sept. 9, 2016) and the D.C. Superior Court's decision in *George v. Jackson*, No. 2013 CA 007115 B (Sup. Ct. D.C. July 7, 2015), *aff'd*, *Jackson v. George*, 146 A.3d 405 (D.C. 2016).

In 1996, Jericho DC registered with the Maryland State Department of Assessment and Taxation ("SDAT") to operate in Maryland. *See* Complaint, ECF No. 1 at 2. That same year, it received a letter from the IRS confirming its status as a validly constituted non-profit corporation and was provided with an Employer Identification Number ("EIN"). *Id.* When James Peebles, Sr. died in 1996, Betty Peebles become the acknowledged leader of the Church.

On March 15, 2009, the Jericho DC Board members were summoned to Betty Peebles' office to sign "Resolution 1-09 of Board of Trustees" ("Resolution 1-09"). Resolution 1-09 established a new slate of Board members. The new Board consisted of former trustees Betty Peebles and Dorothy Williams, as well as new trustees Gloria McClam-Magruder, Denise Killen, Clarence Jackson, Jennie Jackson, Bruce Landsdowne, Norma Lewis, and Lashonda Terrell. By implication, Resolution 1-09 removed William Meadows, Anne Wesley, and Joel Peebles from the Board of Trustees.

On October 12, 2010, Betty Peebles passed away. On November 1, 2010, six individuals, including four of the new purported Board members identified in Resolution 1-09 (Gloria McClam-Magruder, Denise Killen, Clarence Jackson, and Dorothy Williams) incorporated in Maryland as "Jericho Baptist Church Ministries, Inc." (Jericho MD). The articles of incorporation identified the Jericho MD Board as operators of the Church. That same day, Jericho MD filed Articles of Merger with the D.C. Department of Consumer and Regulatory Affairs indicating that, pursuant to a vote by the Board of Trustees of Jericho DC, Jericho DC was merged into Jericho MD. The merger effectively eliminated Jericho DC and made Jericho MD the new governing body of the Church.

Jericho MD first opened bank accounts at Citibank on October 14, 2011 and currently maintains nine bank accounts at Citibank, with an aggregate balance in excess of $2.1 million.

*See* Complaint, ECF No. 1 at 6. Signature authority over the Citibank Accounts currently resides with individuals aligned with Jericho MD. When opening the Citibank Accounts, Jericho MD identified as its EIN the number that had been the EIN of Jericho DC before Jericho DC had merged into Jericho MD. A letter from counsel for Jericho MD dated December 16, 2010, and addressed to the IRS, explicitly states that Jericho MD would henceforth use the EIN that had been previously used by Jericho DC. *See* Complaint, ECF No. 1 at 6.

Betty Peebles' passing and Jericho MD's takeover generated a vigorous legal feud over control of the Church. Since 2010, the parties in this action, along with several individual Church members, have participated in no fewer than six separate lawsuits in federal and state court attempting to determine fully and finally which entity rightfully governs the Church and its assets. *See Jericho Baptist Church Ministries, Inc. v. Jericho Baptist Church Ministries, Inc.*, No. APM 16-647 (D.D.C. filed Apr. 6, 2016); *Bank of America, N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953 (D. Md. filed Sept. 29, 2015); *Franklin v. Jackson*, No. DKC 14-0497, 2015 WL 1186599 (D. Md. Mar. 3, 2015); *George v. Jackson*, No. 2013 CA 007115 B (Sup. Ct. D.C. July 7, 2015) [hereinafter *George v. Jackson*], *aff'd*, *Jackson v. George*, 146 A.3d 405 (D.C. 2016); *Chavez v. Jericho Baptist Church Ministries, Inc.*, No. CAL12-13537 (P.G. Cnty. Cir. Ct. Feb. 18, 2014); *Jericho Baptist Church Ministries, Inc. v. Peebles*, No. CAL10-33647 (P.G. Cnty. Cir. Ct. Oct. 25, 2011), *rev'd*, No. 2023 (Md. Ct. Spec. App. Sept. 19, 2012); *Jericho Baptist Church Ministries, Inc. v. Gloria McClam-Magruder*, No. CAL11-00873 (P.G. Cnty. Cir. Ct. Oct. 25, 2011), *rev'd*, No. 1953 (Md. Ct. Spec. App. Sept. 19, 2012).

In 2013, members of Jericho DC filed suit against members of Jericho MD in the Superior Court for the District of Columbia, alleging that they had been wrongfully excluded from the board of the Church. *See George v. Jackson*. On July 7, 2015, and after a three-day

bench trial, the D.C. Superior Court ruled in favor of Jericho DC. It declared that the surviving members of Jericho DC constituted the valid governing Board of the Church, and ordered Jericho MD to cease exercising ownership or control over the Church and its assets. On September 22, 2016, the District of Columbia Court of Appeals affirmed that decision. *See Jackson v. George*, 146 A.3d 405 (D.C. 2016).

On July 7, 2015, the same day the D.C. Superior Court rendered its decision in *George v. Jackson*, Jericho DC's counsel sent a letter to Citibank informing Citibank of the Superior Court's decision. *See* ECF No. 32-2. The letter states, "[e]arlier today, Judge Stuart G. Nash of the Superior Court of the District of Columbia issued an opinion and order determining the issue of the control and governing body of your account holder, Jericho Baptist Ministries, Inc." The letter also states that "[t]he purpose of this letter is to provide notice to the Bank of the court's decision and to direct the Bank not to permit withdrawals or check disbursements of any kind pending further action and communication from the judicially-recognized board." *Id.* Enclosed with the letter was a copy of the opinion and order. Citibank's counsel alleges that he never received this letter.

Jericho DC also emailed Citibank's counsel on July 8, 2015, advising him that Jericho DC had sent a similar letter to Bank of America, the bank where Jericho DC held its assets, informing Bank of America of the D.C. Superior Court's decision. *See* ECF No. 33-2. Citibank's counsel responded to Jericho DC's letter, reminding Jericho DC that he represented Citibank, and that Citibank's customer was Jericho MD, not Jericho DC. *See* ECF No. 33-3.

On August 10, 2015, Jericho DC's counsel sent an email to Citibank's counsel attaching the order from the District of Columbia Court of Appeals in *Jackson v. George* vacating the D.C. Superior Court's decision to administratively stay the injunctive relief established by its July 7th

opinion and order. *See* ECF No. 33-4. The email did not explain the relevance of the D.C. Court of Appeals' decision to Citibank and, because Citibank's counsel never received the July 7th letter, was confused as to why he was receiving this email. Thus, Citibank's counsel responded with an email dated August 31, 2015, stating:

> Thank you for sending the order from the DC Court of Appeals. I read it with interest, but I and my client had the same reaction as set forth in my July 9 letter to you, which responded to a letter from you enclosing the Superior Court's findings of fact and conclusions of law.
>
> If you have additional information that might explain how these orders are pertinent to Citibank, please send so that I can review with my client. If you would like to discuss over the telephone, please advise and we can set up a time.

ECF No. 33-5.

Citibank did not hear from Jericho DC until Citibank's registered agent in the District of Columbia received a letter dated March 28, 2016, which specifically alleged that Jericho MD had improperly used the EIN formerly belonging to Jericho DC when it opened the bank accounts at Citibank and suggested that Jericho DC and Jericho MD had competing claims to the Citibank assets.

On May 27, 2016, Plaintiff Citibank, N.A. ("Citibank") filed a Complaint for Interpleader against Jericho MD and Jericho DC. ECF No. 1. The Complaint, brought pursuant to 28 U.S.C. § 1335 and Rule 22(a)(1) of the Federal Rules of Civil Procedure, seeks an order determining which entity—Jericho DC or Jericho MD—owns and controls the assets held in the nine Citibank accounts. On September 24, 2016, Citibank filed a Motion to Deposit Account Proceeds into the Court Registry. ECF No. 15. The Court granted Citibank's motion on October 6, 2016, and authorized Citibank to file a petition seeking recovery of its reasonable fees and costs associated with bringing the interpleader action. ECF No. 22. Citibank filed its petition on November 18, 2016. ECF No. 28. The petition explains that Citibank incurred $29,026.10 in

attorneys' fees and $525.56 in expenses. Citibank then applied a 5% discount to the attorneys' fees resulting in $27,574.80, for a total request of $28,100.36. *Id.* Jericho DC filed its opposition on December 14, 2016.[2]

## II.     STANDARD OF REVIEW

Although 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure make no mention of awarding costs and attorneys' fees, courts frequently grant such motions to encourage interpleader actions and thus avoid the cost of multiple lawsuits. *See, e.g.*, *Powell Valley Bankshares Inc. v. Wynn*, No. 01-79, 2002 WL 728348, at *1 (W.D. Va. Apr. 11, 2002). The Court retains broad discretion to award the stakeholder its costs, including reasonable attorneys' fees, out of the deposited fund. *See Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622, 627 (D.N.J. 2015) ("Because the stakeholder is considered to be helping multiple parties to an efficient resolution of the dispute in a single court, courts find that the stakeholder attorney's fees are justified." (internal citations and quotation marks omitted)). "Typically [costs and attorneys' fees] are available only when the party initiating the interpleader is acting as a mere stakeholder, which means that the party has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." 7 Charles Alan Wright et al., Federal Practice and Procedure § 1719 (3d ed. 2001) [hereinafter Wright et al. § 1719]. *See also Rapid Settlements, Ltd. v. U.S. Fid. & Guar. Co.*, 672 F. Supp. 2d 714, 722 (D. Md. 2009); *ReliaStar Life Ins. Co. of*

---

[2] Citibank filed its motion on November 18, 2016 and Jericho DC filed its opposition on December 14. Local Rule 105.2(a) (D. Md. July 2016) requires, in pertinent part, that "all memoranda in opposition to a motion shall be filed within fourteen days of the service of the motion." Thus, Jericho DC's opposition was due on December 2nd. Jericho DC's counsel cites professional obligations and personal issues as reasons for his failure to meet the deadline. Local Rule 105.2(a) does not provide the consequence for a failure to meet the prescribed deadline. Thus, the district court, in its discretion, may decide whether to consider an untimely opposition. *See H & W Fresh Seafoods, Inc. v. Schulman*, 200 F.R.D. 248, 252 (D. Md. 2000); *Gillum v. Pilot Travel Centers, LLC*, No. WDQ-14-0173, 2015 WL 3887610, at *3 (D. Md. June 22, 2015) (citing *Curtis v. Evans*, No. 2003-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004)). The Court finds that Citibank was not prejudiced by the delay and there is no evidence of bad faith. Additionally, as discussed *infra*, the arguments made in Jericho DC's opposition lack merit and thus do not affect this Court's decision. Accordingly, the Court will exercise its discretion and accept Jericho DC's opposition.

*N.Y. v. LeMone*, No. 7:05CV00545, 2006 WL 733968, at *2–3 (W.D. Va. Mar. 16, 2006) (discussing when stakeholder may recover attorney's fees); *Safemasters Co. v. D'Annunzio & Circosta*, No. K-93-3883, 1994 WL 512140, at *5 (D. Md. July 18, 1994); *Aetna Life Ins. Co. v. Outlaw*, 411 F. Supp. 824, 825–26 (D. Md. 1976) (noting that only impartial stakeholders may recover attorney's fees).

An award of costs and attorneys' fees to a stakeholder in a successful interpleader action must be both equitable and modest. "By its very nature [an interpleader fee] is of a relatively small amount simply to compensate for initiating the proceedings." *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962); *Sun Life Assurance Co. v. Tinsley*, No. 6:06-CV-00010, 2007 WL 1388196, at *2 (W.D. Va. May 9, 2007), *report and recommendation adopted sub nom.*, *Sun Life Assur. Co. Canada v. Tinsley*, No. 6:06-CV-00010, 2007 WL 1795728 (W.D. Va. June 19, 2007). Only a limited recovery is available to stakeholders because the interpleader process "does not usually involve any great amount of skill, labor or responsibility." *Lewis v. Atlantic Research Corp.*, No. 98-0070-H, 1999 WL 701383, at *7 (W.D. Va. Aug. 30, 1999) (quoting *Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940)). Thus, the stakeholder's recovery is properly limited to the preparation of the petition for interpleader, the deposit of the contested funds with the court, and the preparation of the order discharging the stakeholder. *See, e.g.*, *ReliaStar Life Ins. Co. of N.Y. v. LeMone*, No. 7:05CV00545, 2006 WL 1133566, at *2 (W.D. Va. Apr. 25, 2006); Wright et al. § 1719. *See also Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014) ("Recoverable expenses are properly limited to the attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit.").

The Supreme Court has established the "lodestar" method for determining a reasonable fee. The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Twelve factors, first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), guide the determination of what constitutes a reasonable fee. The factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717–19. *Accord Robinson*, 560 F.3d at 243–44; *Hensley*, 461 U.S. at 434 ("[W]e have instructed that a district court's discretion should be guided by [these] twelve factors."). Based on the foregoing, Citibank is indeed entitled to attorneys' fees and costs, but only for filing and resolving the interpleader action.

## III. ANALYSIS

Jericho DC does not dispute that Citibank is an impartial stakeholder entitled to recover attorneys' fees and costs associated with initiating this action. Instead, Jericho DC argues that Citibank's costs should be borne by Jericho MD because it was Jericho MD's conduct that caused the dispute giving rise to Citibank's interpleader. *See* ECF No. 32-1 at 4. Alternatively, Jericho DC argues that Citibank's award should be reduced because Citibank delayed filing this

interpleader action for over a year after Jericho DC notified Citibank that it was owner of the disputed funds. *See* ECF No. 32-1 at 5–6. Neither argument is persuasive.

First, Jericho cannot point this Court to any legal support for essentially assessing stakeholder fees to the losing claimant. Generally, "fee awards are drawn from the interpleaded fund itself, not from the losing party." *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Sprague*, 251 F. App'x 155, 157 (4th Cir. 2007). The only exception is where the losing claimant's bad faith or misconduct during the interpleader action justifies the fee shift. *See id.* at 156 (recognizing that some courts have held that losing parties can be held responsible for the interpleading plaintiff's fees and costs, this option has been applied only 'when their conduct justifies it.'" (quoting *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989))); *see also Prudential Ins. Co. of America v. Boyd*, 781 F.2d 1494, 1497–98 (11th Cir. 1986) (reversing as clearly erroneous finding of bad faith as ground for shifting fees in interpleader action); *In re The Kelly Group*, 159 B.R. 472, 481 (Bankr. W.D. Va. 1993).

Jericho DC gives the Court no reason to shift fees and costs onto Jericho MD. Contrary to Jericho DC's assertions, simply because Jericho MD lost the underlying litigation concerning control over the Church and its assets does not amount to acting in bad faith or engaging in misconduct connected with the interpleader action. Accordingly, the Court will decline Jericho DC's invitation to assess Citibank's fees and costs against Jericho MD rather than against the interpleaded funds.

As to Jericho DC's second argument regarding reducing Citibank's fees because of its purported delay in filing this interpleader, Jericho's main contention is that Citibank's delay *may* have caused it financial harm it allowed time for Jericho MD to deplete the Citibank accounts. A more timely interpleader action, so the argument goes, would have resulted in Citibank's

9

depositing more interpleaded funds with the Court. It is true that a stakeholder's request for attorneys' fees may be denied when the stakeholder unreasonably delays depositing the interpleaded funds with the court. *See* Wright et al. § 1719 (awarding fees and costs to the stakeholder should not be granted "if the stakeholder has contributed to the need for interpleader by acting in bad faith or by unduly delaying in seeking relief"); *John Hancock Mut Life Ins Co v. Doran*, 138 F. Supp. 47, 50 (S.D.N.Y. 1956) (deciding that an interpleader plaintiff "should not now be permitted to use interpleader, an equitable remedy, to divest itself of any liability when it has had use of this fund for almost one year after it became aware of the nature and the character of the adverse claims involved"). *Cf. Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290 (8th Cir. 1980) (affirming the imposition of prejudgment interest on stakeholder for its unreasonable delay in depositing the contested funds with the court).

However, Jericho DC is hard-pressed to demonstrate that Citibank unreasonably delayed the filing of this action. Indeed, Jericho DC itself contributed to the confusion as to when Citibank received notice of the controversy sufficient to warrant filing the interpleader action. Citibank's counsel attests that he never saw Jericho DC's initial letter dated July 7, 2015 notifying Citibank of the favorable D.C. Superior Court ruling. *See* ECF No. 33 at 3 ("By my signature below, I [Citibank's counsel] certify that I never saw the July 7 letter prior to the filing of the Opposition by Jericho (DC)."). This is because Jericho DC sent the July 7th letter to Citibank's registered agent even after Citibank's counsel warned Jericho DC legal correspondence should be sent directly to counsel and not the resident agent to ensure that counsel receives it. *See* Citibank November 6, 2014 Email, ECF No. 33-1. The July 7 letter, therefore, never reached Citibank's counsel and so no action was taken.

Because Citibank's counsel had not received the first letter, Jericho DC's follow-up email on July 8, 2015 made little sense regarding the import of the DC Court ruling. *See* Jericho DC Email, ECF No. 33-4. Notably, Citibank's counsel sought clarification from Jericho DC's counsel the next day. But Jericho DC never replied, *see* ECF No. 33 at 4. *See also* ECF No. 33-5. Jericho DC's failure to clear up the confusion of its own making, therefore, likely contributed to the delay in Citibank filing this action. Indeed, once Jericho DC's March 28, 2016 correspondence demanding that Citibank cease and desist from allowing Jericho MD access to the accounts had reached Citibank's lawyers, the instant litigation began soon thereafter. Accordingly, this Court cannot conclude that delay in filing suit must fall at Citibank's feet.

Nonetheless, based on this Court's independent review of Citibank's request, the Court finds that $27,574.80 in attorneys' fees exceeds that to which the bank is entitled. First, the Court notes that hourly attorney rates above $500 and paralegal rates of $187 are not "reasonable" to use in the loadstar calculation.[3] *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014) (citing *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012)). Reasonable hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). Appendix B the Court's Local Rules (D. Md. July 2016) sets forth presumptively reasonable rates for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)). For an attorney with twenty years or more experience, like the lead counsel in this case, the Court sets a presumptively reasonable hourly rate is between $300 and $475, as compared to the submitted hourly rate of $550.

---

[3] Citibank's counsel submitted an affidavit which provides the billing rates the attorneys and paralegals involved in the interpleader action. Citibank's lead counsel billed at a rate of $550 an hour, two additional attorneys billed at a rate of $237 per hour and the firm's paralegal billed at $187 per hour. *See* Attorney Affidavit, ECF No. 29-2 at 3.

Similarly, Appendix B provides that the maximum rate for paralegal services is $150. The Court therefore adjusts the $550 attorney rate to $475 and the paralegal rate to $150.

Additionally, not all of the 65.70 total hours in attorney and paralegal time for which Citibank seeks reimbursement are legally compensable. In an interpleader action, the stakeholder may recover for its work to bring the action, such as preparing the complaint, obtaining service of process, and securing the plaintiff's discharge from liability and dismissal from the lawsuit. *See Hearing v. Minnesota Life Ins. Co.*, 33 F. Supp. 3d 1035, 1044 (N.D. Iowa 2014); *see also Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014) ("An interpleader plaintiff is . . . not entitled to an attorney fee reimbursement for any 'additional professional services' rendered by the plaintiff's attorney." (citations omitted)). The stakeholder is not entitled to reimbursement for work performed *after* it filed its petition for interpleader, deposited the contested funds with the Court, and prepared the order of discharge from the case. *See Midland Nat. Life Ins. Co.v. Ingersoll*, No. 13-C-1081, 2014 WL 7240268, at *4 (E.D. Wis. Dec. 18, 2014) (interpleader plaintiff not entitled to fees incurred in discovery-related tasks); *Hearing*, 33 F. Supp. 3d at 1044.

After careful review of Citibank's billing statements, Citibank's attorney affidavit, and the docket, the Court concludes that Citibank has spent 33.3 hours preparing the interpleader action, obtaining service of process on the claimants to the fund, or attempting to secure Citibank's discharge from liability and dismissal. In this case, preparing the interpleader complaint required Citibank to spend considerable time reviewing the previous decisions related to the question of Church governance to assess the legitimacy of Jericho DC's claim to the assets held in the Jericho MD Citibank accounts. Citibank will be credited for this time. These hours, multiplied by the applicable billable rates depending on the attorney or paralegal performing the

12

work, amounts to $12,518.60. Moreover, this award has little effect on the interpleaded funds, which total $2,178,674.00. *Cf. Sun Life Assurance Co.*, 2007 WL 1388196, at *2 (explaining that an additional reduction to the amount awarded to the stakeholder may be warranted where such "recovery would substantially deplete the interpleader funds at issue"). The Court further finds that Citibank is entitled to recover its claimed expenses of $525.56 (Jericho DC does not argue otherwise), for a total recovery of $13,044.16.

## IV. CONCLUSION

For the reasons stated above, the Court orders the award of $13,044.16 from the interpleader funds to be disbursed to Citibank. A separate order will follow.

| 5/17/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
|  | United States District Judge |