IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CITIBANK, N.A., | * | |
| Interpleader Plaintiff, | * | |
| v. | * | Civil Action No. PX-16-1697 |
| JERICHO BAPTIST CHURCH, MINISTRIES, INC. (Jericho DC), *et al.*, | * | |
| Interpleader Defendants. | * | |

******

## **CORRECTED MEMORANDUM OPINION AND ORDER**

Pending before the Court in this interpleader action is a Motion for Summary Judgment filed by Interpleader Defendant Jericho Baptist Church Ministries, Inc. (DC) ("Jericho DC") against its co-Interpleader Defendant Jericho Baptist Church Ministries, Inc. (Maryland) ("Jericho MD"). ECF No. 45. The matter has been fully briefed. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Jerhico DC's Motion for Summary Judgment, and will hold a hearing to determine outstanding matters as laid out in this Memorandum Opinion and Order.

I. BACKGROUND

Jericho DC and Jericho MD share a contentious history of litigation regarding the administrative control of Jericho Baptist Church Ministries, Inc. The facts and circumstances of those previous cases, relevant here, are laid out in the Court's opinion in *Bank of America, N.A. v. Jericho Baptist Church Ministries, Inc.*, No. 15-02953, 2016 WL 4721257, at *1 (D. Md. September 9, 2016) (hereinafter the "Bank of America matter"). In this interpleader action filed by Citibank on May 27, 2016, Citibank seeks Court determination of whether Jericho DC or

1

Jericho MD is the rightful owner of the funds held in nine Citibank accounts totaling $2,178,674.00.[1] *See generally* ECF No. 1.

On October 14, 2011, Jericho MD opened the first of the Citibank accounts at issue and with $1,700,000 transferred by check from Jericho DC's Bank of America account. ECF No. 1 ¶ 23; ECF No. 45-1 at 58. While Jericho MD opened the Citibank account in its own name, it used Jericho DC's tax identification number ("EIN"). *See* ECF No. 1 ¶ 27; ECF No. 50-1 at 4–6. Jericho MD thereafter transferred to the Citibank account an additional $2.5 million from a bank account held at PNC Bank. *See* ECF No. 50-3 at 4; ECF No. 57; ECF No. 57-1.

On November 1, 2016, after years of Jericho MD transacting business using the Citibank accounts, Citibank deposited the balance of the account funds in the Court's registry in connection with this interpleader action. *See* ECF Nos. 22, 26. Jericho DC moved for summary judgment in its favor, arguing that the outcome in *George v. Jackson*, No. 2013 CA 007115 B (Sup. Ct. D.C. July 7, 2015) (hereinafter "*George v. Jackson*"), and this Court's opinion in the Bank of America matter, demand that the Court rule in Jericho DC's favor here. ECF No. 45 at 7–8. Jericho MD opposed the motion, arguing that genuine disputes of material fact as to which entity controls the accounts, and commingling of account funds, preclude summary judgment. *See generally* ECF No. 50-1. For the following reasons, the Court grants in part and denies in part Jericho DC's motion for summary judgment.

---

[1] Citibank's initial deposit in the Court's Registry was for $2,177,637.09. A subsequent deposit was made for $1,036.91. On May 17, 2017, the Court granted a petition by Citibank for attorney's fees. ECF No. 44. $13,044.16 was paid from the principal deposited in the Court's Registry to cover these fees. Thus, the remaining principal in the Court's Registry is $2,165,629.84. Although the discrepancy in the amount of principal does not affect the reasoning of the Court in this Memorandum Opinion or the award herein made, the Court will calculate interest for the award based on the amount of principal currently in the Court's Registry. Additionally, the difference in principal amount due to the $13,044.16 in fees will be relevant for any future recovery made by Jericho DC or Jericho MD.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The "mere existence of a scintilla of evidence in support" of the party opposing summary judgment is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The nonmoving party may not rest upon mere allegations or denials but instead must, by affidavit or other evidence, set out specific facts in the record showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c)(1). The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). The party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court will credit the record over the averred fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Collateral Estoppel and Funds Transferred from Jericho DC's Bank of America Account

The doctrine of collateral estoppel "is concerned with the issue implications of the earlier litigation of a different case." *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 361 Md. 371, 390 (2000). Where an issue has been fully and finally litigated in a prior matter involving the identical parties or their privies, the parties are estopped from relitigating the same matter. *Id.* at 387 (collecting cases). In determining whether collateral estoppel, or issue preclusion, applies, the Court must ascertain whether: 1) the issue in question is identical to the one previously decided, 2) there was a final judgment on the merits, 3) the parties are the same or in privity to the parties of the prior adjudication, and 4) the parties had a fair opportunity to be heard on the issue. *Id* at 391; *see Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995) (under D.C. law, collateral estoppel requires an issue be actually litigated, determined by a valid, final judgment on the merits, after a full and fair opportunity for litigation by the parties or their privies, and the determination must have been essential to the judgment).

It is undisputed that on October 14, 2011, Denise Killen, a purported Jericho MD board member, transferred $1.7 million from Jericho DC's Bank of America account to the Citibank account. *See* ECF No. 45-1 at 58. That transaction occurred after March 15, 2009. This Court, relying on the findings of *George v. Jackson*, which had determined that "actions taken by [Jericho MD] after March 15, 2009, acting as the purported Board of Trustees of Jericho DC . . . are invalid," ECF No. 45-1 at 20; *see Jericho Baptist Church Ministries, Inc.*, 2016 WL 4721257 at *4–5, *10, has already determined that Jericho DC had lawful control over the Bank of America funds as of March 15, 2009, and all subsequent Jericho MD transactions on that account

4

were invalid. By extension, therefore, the Court already has determined that the funds transferred from the Bank of America account to the Citibank account were and are properly controlled by Jericho DC. Because this question of control has been determined, the first prong of the collateral estoppel test is satisfied. *See Jericho Baptist Church Ministries, Inc.*, 2016 WL 4721257, at *10.

Similarly, the remaining three elements of collateral estoppel cut in Jericho DC's favor as to the $1.7 million transferred from the Bank of America Account. Both *George v. Jackson* and this Court's prior opinion were final judgments on the merits. Both matters involved Jericho DC and Jericho MD or their privies. Finally, the parties certainly had a fair chance to be heard on the issue central to this case—to wit, which entity lawfully controlled the Church. In the Bank of America matter, the Court discussed at length why both Jericho MD and Jericho DC's interests were represented in the *George v. Jackson* case. *Jericho Baptist Church Ministries, Inc.*, 2016 WL 4721257, at *6–7. In so doing, the Court also ensured both parties were well represented in the Bank of America matter. Thus, the four prongs of issue preclusion are satisfied.

Jericho MD attempts to defeat this outcome by contending that the facts surrounding the Citibank account are materially different from those driving Bank of America matter and in *George v. Jackson*. ECF No. 50-1 at 5. More particularly, Jericho MD argues that in the Bank of America matter, Jericho DC's name was associated with the account in question, while here, Jericho MD's name was used to open the account at issue. ECF No. 50-1 at 5. This fact is immaterial to the Court's determination. The central question is which party— Jericho MD or Jericho DC—controls the *funds* in those Citibank accounts. As discussed above, this Court already decided that at the time of the transfer Jericho DC rightfully controlled the Bank of America account; consequently, it does not matter to which entity name the transfers were made.

5

The salient point is that the transactions involved funds controlled by Jericho DC that Jericho MD could not lawfully transfer.

Jericho MD also argues that summary judgment is defeated because the funds currently in the account were commingled with Jericho MD funds earned subsequent to the account's opening. The concept of "commingling" assets customarily arises in the context of conversion, or the exertion of ownership by one person over the property of another. *Sage Title Group, LLC, v. Roman*, 455 Md. 188, 203 (2017) (quoting *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999)) (internal quotes omitted). According to *Sage Title*, the traditional view of conversion did not apply to intangible property such as funds in a bank account which had been commingled, thus rendering the converted funds no longer identifiable. *Sage Title Group, LLC*, 455 Md. at 203. However, where, as here, funds were "wrongfully obtained or retained or diverted in an identifiable transaction," *Jasen*, 354 Md. at 565 (quoting 1 Fowler V. Harper et al., *The Law of Torts,* § 2.13, at 2:56 (3d ed.1986)), commingling is not a viable defense.

Nor does the argument make sense here. In support of its commingling theory, Jericho MD argues that because it collected more than $5 million in tithes and offerings and deposited a portion of those collections in the Citibank accounts, the Court cannot ascertain if the $2.1 million funds currently in the Citibank account belong to Jericho DC. ECF No. 50-1 at 6–7. But Jericho MD ignores that the Citibank account was funded with at least $1.7 million that is easily identifiable as rightfully belonging to Jericho DC and wrongfully diverted from Jericho DC's Bank of America account via a clearly identifiable transaction. *See Jasen*, 354 Md. at 565–66 (specific mutual fund shares were described with reasonable certainty, rendering the funds "sufficiently identifiable" thus entitling party to recovery) (internal citations omitted). Therefore, of the $2.1 million in the accounts at present, as a matter of law, $1.7 million of the

6

current account funds belong to, and are controlled by, Jericho DC. Consequently, summary judgment is granted in Jericho DC's favor as to $1.7 million, leaving $477,637.09 in question.

### B. Funds Transferred from the PNC Bank Account

On January 20, 2012, Citibank account records reflect the transfer of an additional $2.5 million from a PNC Bank account to the Citibank account. *See* ECF 50-3 at 4; ECF No. 57-1.[2] Jericho DC contends funds in that account belong to Jericho DC. ECF No. 55 at 5. The same logic used in the *Bank of America* matter could apply to the PNC Bank account, but only if Jericho DC opened the PNC account on or before March 15, 2009, and the account at that time contained an amount equal to or in excess of the amount that Jericho DC now seeks to recover. Like the $1.7 million transfer, the $2.5 million transfer is a clearly identifiable transaction. However, the record currently includes no evidence of the origins or history of the PNC Bank account, and as such, Jericho DC has failed to provide sufficient evidence to support a grant of summary judgment as to the remaining $477,637.09 on that basis. Nor is there sufficient information about the sources of other transferred funds reflected in the Citibank account records for the Court to determine that these funds rightfully were controlled by Jericho DC when they were transferred. The parties will be granted leave to supplement the record with evidence regarding the PNC Bank account in issue, or the sources of other specifically identifiable transactions, by no later than July 20, 2018. The Court will hold a hearing on this matter on July 26, 2018, at 1:00 p.m.

---

[2] The Court provided an opportunity for Jericho MD to dispute the provenance and control of the $2.5 million transfer, which Jericho DC initially had stated originated from the same Bank of America account. *See* ECF No. 55 at 5; ECF No. 56. Upon the Court's order requesting verification of this statement, Jericho DC corrected the record and informed the Court that the funds originated in a PNC Bank account. ECF Nos. 57, 57-1. Jericho MD did not respond.

## IV. CONCLUSION AND ORDER

For the reasons stated in this Memorandum Opinion, it is this 13th day of July, 2018,

ORDERED by the United States District Court for the District of Maryland:

1. The Interpleader Defendant Jericho DC's Motion for Summary Judgment BE, and the same hereby IS, GRANTED IN PART and DENIED IN PART;

2. The Clerk is directed to transmit $1.7 million of the principal deposited in the Court's Registry to Jericho DC, along with a pro rata share (78.5%) of the interest accrued on the principal amount;

3. The Parties may supplement the record by July 20, 2018, and a hearing will be held on July 26, 2018, at 1:00 p.m.;

4. The Clerk is directed to transmit copies of this this Memorandum Opinion and Order to the parties.

| 7/13/2018 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |