IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CITIBANK, N.A., | * | |
| | * | |
|    Interpleader Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. PX-16-1697 |
| | * | |
| | * | |
| JERICHO BAPTIST CHURCH, | * | |
|   MINISTRIES, INC. (Jericho DC), *et al.*, | * | |
| | * | |
|    Interpleader Defendants. | | |
| | ****** | |

**MEMORANDUM OPINION**

This interpleader action requires this Court to determine which of two church factions – Jericho Baptist Church, Ministries, Inc. (DC) ("Jericho DC"), or Jericho Baptist Church Ministries, Inc. (Maryland) ("Jericho MD") – is entitled to the remaining funds in the Court's Registry totaling $465,629.84.[1] Citibank, as interpleader Plaintiff, initially sought this Court's determination as to which faction is entitled to the funds held in nine separate accounts totaling $2,178,674.00.[2] At the summary judgment stage, the Court awarded $1.7 million to Jericho DC because the facts indisputably demonstrated that Jericho MD had opened the Citibank account in question with $1.7 million transferred from a Jericho DC account that existed prior to Jericho MD assuming control over the church. Thus, the funds properly reverted to Jericho DC.

The remaining funds, however, were not indisputably traceable to Jericho DC. At the summary judgment stage, Jericho DC did indeed proffer that Jericho MD had also transferred an

---

[1] The Court incorporates its factual recitations and applicable legal analysis articulated in its Memorandum Opinion at ECF No. 61.
[2] The funds from the Citibank accounts were deposited into the Court's Registry at the inception of the case. ECF No. 22

additional $2.5 million which, like the initial $1.7 million, rightfully belonged to Jericho, DC. The proof of ownership as to this $2.5 million transfer, however, was less clear.

Accordingly, the Court set the matter in for a bench trial to allow each side the opportunity to demonstrate which faction is entitled to the remaining funds. The parties acknowledge that this interpleader matter is one of equity. *See Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 F. App'x. 767, 769 (4th Cir. 2002). The Court, therefore, retains broad discretion to determine which entity ought, in fairness, to receive the funds as supported by the record evidence. *See Am. Fed'n of Labor v. Watson*, 327 U.S. 582, 593 (1946) ("The power of a court of equity to act is a discretionary one.").

At trial, Jericho DC demonstrated that on January 20, 2011, Jericho MD transferred by wire $2.5 million into one of the Citibank accounts from a PNC account owned and controlled by Jericho MD. *See* Trial Exs. DC 10, MD 7. Jericho DC also demonstrated that even though the PNC account was opened by Jericho MD, the account was funded with the proceeds of Jericho MD's sale of Jericho DC's treasury bills. *See* Trial Exs. DC 5, 7, 9; MD 7. Jericho DC also demonstrated – and Jericho MD did not dispute – that these treasury bills were purchased by Jericho DC prior to Jericho MD's formation. *Id.* Accordingly, the great weight of the evidence at trial demonstrated that the Citibank account was funded in January 2011 by an additional $2.5 million traceable to the sale of a Jericho DC asset, the treasury bills. Because $2.5 million is traceable to Jericho DC, and is an amount far greater than the funds remaining in the Court Registry from the Citibank account, the Court finds that the remaining funds rightfully are awarded to Jericho DC.

Jericho MD lodges no meaningful challenge to the traceable stream of funds described above. Rather, Jericho MD argues that it is nonetheless entitled to the remainder of the funds

because Jericho MD used the Citibank account to operate the church and so should receive "credit" for meeting the church's financial obligations. Jericho MD, more particularly, contends that while it operated the church, it deposited tithes and offerings from Jericho MD's church services into the Citibank account as well as funds collected from parking fees charged to patrons who parked on church grounds during football games and other events held at Fed Ex Field. Jericho MD also demonstrated that it used the Citibank account to pay general church operating expenses, but it provided no further detail as to specifics of such expenses. From this proof, Jericho MD argues that any funds remaining in the Citibank account rightfully belonged to Jericho MD.

Although the argument has some intuitive appeal, it is not supported by the evidence. In theory, if Jericho MD demonstrated that from the time it opened the Citibank account until Jericho DC resumed control over the church, Jericho MD had turned a *profit* on its independent church efforts and that same profit was reflected in the Citibank account, then perhaps an argument could be fronted that Jericho MD is entitled to some or all of the funds to recoup the profit derived from ventures independent of Jericho DC's financial interests. However, Maryland did not even demonstrate, on a most basic level, that its income outpaced its expenses, leaving no possibility that any profit attributable to Jericho MD remained in the account.

Further, a sizeable portion of the income deposited into the Citibank account came from parking fee revenues, the origin of which was not the result of Jericho MD's independent efforts, but derived from a pre-existing venture of Jericho DC's which had been generating revenue for the church prior to Jericho MD assuming control.[3] In fairness, the Court is not prepared to credit

---

[3] Jericho MD did not dispute that the property from which the parking fees were generated had been owned and controlled by Jericho DC prior to Jericho MD assuming control of the church. Likewise, Clarence Jackson testified that as the parishioner responsible for collecting the parking fees and depositing them into the church bank account,

3

the parking fees to Jericho MD when the source of that income stream originated with Jericho DC.  However, based on Jericho MD's failure of proof in this case, the Court is not convinced the analysis would be any different even if credit was awarded to Jericho MD for such parking fees.

Accordingly, the Court finds that Jericho DC has demonstrated that an additional $2.5 million in proceeds were used to fund the Citibank account.  Thus, because the remainder of the funds in the Court Registry represent a fraction of the $2.5 million, DC is entitled to the remaining Citibank account funds, consistent with and for the reasons articulated in the Court's prior opinion at ECF No. 61.

A separate Order follows.


11/29/2018__                                                  /S/
Date                                                     Paula Xinis
                                                         United States District Judge

---

his practice had not changed from 1998 when he first assumed this role for Jericho DC continuously through 2014 when he stopped collecting parking fees.